Ryan J. Works, Esq. (NSBN 9224)
Amanda M. Perach, Esq. (NSBN 12399)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
rworks@mcdonaldcarano.com
aperach@mcdonaldcarano.com

*Attorneys for John Kindt*

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>NTI GROUND TRANS INC<br><br>Debtor. | Case No.: BK-22-10458-NMC<br>Chapter 11<br><br>**MOTION TO DISMISS CASE FOR LACK OF AUTHORITY TO FILE**<br><br>**Hearing Date: March 1, 2022**<br>**Hearing Time: 10:30 a.m.**<br><br>**Hearing Place; Foley Federal Building, 300 Las Vegas Blvd. South, Las Vegas, Nevada 89101, Courtroom 3** |

John Kindt, individually and as a 45% "Founding Shareholder", director, and officer of the purported Debtor's parent company - National Transportation, Inc., a Nevada corporation ("Debtor" or "NTI"), through his undersigned attorneys, presents this motion for entry of an order dismissing the above-captioned chapter 11 case ("Case") for lack of authority to file (the "Motion"). This Motion is made and based on the following Memorandum of Points and Authorities, the Kindt Declaration ("Kindt Decl.") filed concurrently herewith, the exhibits and papers attached and referred to herein, this Court's docket and the argument to be adduced at the hearing on this matter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      JURISDICTION AND VENUE**

1. The Court has subject matter jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and may be determined

by the Court.

3. The statutory predicates for relief include 11 U.S.C. § 1112(b).

4. Pursuant to L.R. 9014.2, Kindt consents to the entry of a final order or judgment by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

## II.    INTRODUCTION

The instant Chapter 11 Case was not lawfully authorized pursuant to the Debtor's parent company's Bylaws. *See* Kindt Decl. at ¶4 **Exhibit 1** ("Bylaws"). As set forth in the Bylaws, "The business of the Corporation shall be managed by its Board of Directors, which may exercise all such powers of the Corporation and do all such lawful acts and things as are not by statute or by the Articles of Incorporation or these Bylaws directed or required to be exercised or done by the stockholders." *Id*. at Article III, § 3.1. Although the Bylaws are silent about the extraordinary event of filing the corporation's subsidiaries for bankruptcy, the decision clearly lies within the discretion of the board of directors, or the shareholders.

Mr. Kindt is on the board of directors of the Debtor and as a director did not receive notice of a meeting pursuant to Sections 3.5, 3.6 and/or 3.7 of the Bylaws. *Id*.; *see also* Kindt Decl. at ¶4. As a result, there was no "quorum" or "voting" as to the instant Chapter 11 Case, in compliance with Section 3.8 of the Bylaws ("A majority of the Directors then in office, at a meeting duly assembled, shall constitute a quorum of Board of Directors for the transaction of business…"). *Id*. Finally, there is no corporate resolution memorializing notice, a meeting, or the vote of directors, authorizing the filing of the instant Chapter 11 Case. *Id*. at ¶5.

Along with Mr. Gleich, Mr. Kindt is also a 45% "Founding Shareholder" and officer of the Debtor's parent. *Id*. at ¶3. As a major shareholder (owning 450,000 shares of the total 1,000,000 shares authorized under Nevada law)[1], Mr. Kindt never received notice of a meeting of

---

[1] Notably, 1,000,000 shares of the Debtor's parent were authorized, and issued, as of the filing of the instant Bankruptcy Case (Kindt = 450,000, Gleich = 450,000 and Booty Green, LLC = 100,000), yet Mr. Gleich purported to dilute the interests of the 100% shareholders of the company, by attempting to issue 12% to 7235 Investments, LLC a Texas entity that was just organized as of January 25, 2022. *See* [ECF No. 1 at page 9 of 14]. Not only was this attempted

shareholders either. *Id*.; *see also* **Exhibit 1** at Article II (outlining the requirements for shareholder meetings, notice and voting).[2]

So whether the Bylaws authorize the directors or the shareholders to vote to file NTI's subsidiaries for Chapter 11 Bankruptcy, neither constituency was given proper notice, the opportunity to attend a meeting, or the option to vote. Instead, the Debtor filed a so-called: *Certificate of Corporate Resolutions of National Transportation Inc., a Nevada corporation* (the "Resolution") that states: **"I [James R. Gleich]…do hereby certify that the following acts and resolutions were made and adopted by me on February 2, 2022, on behalf of National Transportation Inc. (the "Corporation")."** [ECF No. 3] (emphasis added); *see also* Kindt Decl. at **Exhibit 3**. But Mr. Gleich does not have the unilateral authority to pass acts and resolutions – especially those that relate to a major decision such as bankruptcy filings for NTI and its subsidiaries. Furthermore, there are no "orders and resolutions of the Board of Directors" to carry into effect, as further stated by Mr. Gleich in the Resolution. *Id*. at ¶7. In the Resolution, there is no mention of a meeting of the directors of the Debtor, a notice of such meeting, or even a resolution that is executed by the directors for the President to carry out. *Id*. Debtor baldly alleges that the president of the Debtor's parent (also a 45% shareholder and director) had the power to file the Chapter 11 Cases, without first calling a meeting and obtaining the consent of the directors or shareholders. *Id*. at Ex. 3. But corporate officers do not enjoy the unfettered discretion to file corporate bodies for bankruptcy as that person obtains authority from the board of directors, which is empowered by the shareholders. Here, "[t]he business of the Corporation *shall* be managed by its Board of Directors…"*See* Kindt Decl. at Ex. 1, Article III, § 3.1. Finally, NRS 78.135(3) and 78.138 do not "permit the President to authorize a reorganization of the Corporation under Chapter 11 of Title 11 of the United States Code". Of course the President can act according to the board's directives, but Debtor's reference to the "Duties of President" is unavailing because the President

---

shareholder dilution unlawful, but it was futile as there were no authorized shares to issue to new shareholders. *See* Kindt Decl. at ¶6; **Exhibit 2**.

[2] (e.g. §§ 2.5, 2.6, 2.7, 2.8 and 2.9 - "Special Meetings", "Notice of Meetings", "Limitation on Business", "Quorum", "Voting Required for Action", "Action by Written Consent")

gets his powers from the Board of Directors, which were not exercised under these circumstances. *Id.* at Article IV, § 4.5 *generally*.

Pursuant to § 1112(b) of the Bankruptcy Code, "on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall . . . dismiss a case under this chapter. . .for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate."

As the record described herein shows, cause is present—the Chapter 11 Case was commenced without the proper corporate authority and should be swiftly dismissed. Alternatively, Mr. Kindt requests that the Court appoint a Chapter 11 Trustee if it is unwilling to dismiss this Chapter 11 Case.

**III.   FACTS**

    **A.  History**

1. NTI was incorporated in 2018 by Kindt and Gleich as "Founding Shareholders". Each was originally a fifty percent (50%) shareholder of NTI. Kindt Decl. at ¶ 3. Kindt has invested over $900,000 into the business. *Id*. Gleich has invested less than $50,000 into the business. *Id*.

2. Thereafter, a ten percent (10%) interest was conveyed to an entity named Booty Green, LLC for $300,000.[3] *Id*. Kindt and Gleich's interests thereafter became forty-five percent (45%) each. *Id*. Kindt and Gleich are also directors and officers of the Debtor's parent and also the other NTI Entities.[4]

---

[3] Booty Green, LLC is owned equally by three individual members - Bradlee Downs, Sean Devlin and John Gilbert, who are all aligned with Kindt. *See* Kindt Decl. at ¶3. Upon information and belief, none of these individuals received notice of a meeting for purposes of filing the instant Chapter 11 Case. *Id.* at ¶4.

[4] Together with NTI, NTI-NV Inc., NTI-CA Inc., and NTI-Ground Transport Inc. will be referred to herein as the "NTI Entities".

3. Kindt and Gleich, who had been friends for approximately thirty-years, ran the business of the NTI Entities. *Id.* at ¶8. Kindt ran the Los Angeles and New York[5] operations, which have been financially successful while Gleich ran the Nevada operations which have not been financially successful.[6] *Id.*

4. NTI-NV, Inc., NTI-CA, Inc., and NTI-GROUNDTRANS, Inc. are wholly owned by NTI – 100%. NTI owns 51%, and therefore the controlling interest, of NTI-NY, Inc. *Id.* at ¶9.

5. T.J. Pantaleo ("Pantaleo") and Marc Jacobi ("Jacobi") have no ownership interest in NTI, yet both have provided services to the NTI Entities from time-to-time. *Id.* at 10. Moreover, Marc Jacobi purports to be a director of at least NTI-NV Inc. *Id.*; *see* **Exhibit 4** attached thereto. Pantaleo is an attorney licensed in the District of Columbia who has represented NTI, Kindt and Gleich. *Id.* at ¶11. Jacobi is an accountant who provides accounting services to NTI. *Id.* Both Pantaleo and Jacobi were listed as unsecured creditors in Debtor's parent company's top-twenty list. [ECF NO. 1 at 6-7 of 14].

6. Kindt learned of the financial problems of the Nevada operation in late 2021. *Id.* at ¶11. Since then, the parties have had a complete falling-out and their relationship has become dysfunctional. *Id.* Gleich has taken radical actions to keep Kindt in the dark regarding the NTI Entities, and has taken a series of actions that directly harm Kindt's interests in the NTI Entities, including the instant unilateral decision to file NTI and its subsidiaries for bankruptcy. *Id.*

7. For example, sometime prior to the filing of the instant Chapter 11 Case, Gleich actively attempted to dilute Kindt's ownership interest, to unlawfully gain control of one or more of the NTI Entities. *Id.* at ¶12. This is evidenced by the bogus List of Equity Security Holders on file with the Court [ECF No. 1 at 9 of 14], whereby Gleich allegedly tried to grant a 12%

---

[5] Upon information and belief, NTI-NY Inc. has not filed for bankruptcy protection.

[6] The Nevada operations have lost more than $800,000 in eight months. Meanwhile, Gleich diverts resources to the losing Nevada operations, putting the profitable Los Angeles and New York operations in great jeopardy, and therefore the NTI and the NTI affiliates, as well. Money is poured into the losing Nevada operations while leaving essential payments in the others, such as insurance, regulatory fees, parts and maintenance, unpaid or perpetually late, ruining essential vendor and regulator relationships. Kindt Decl. at ¶8.

1  ownership interest in NTI, to a group named 7235 Investments LLC, a Texas limited liability
2  company that was organized on or about January 25, 2022. *Id*. at ¶12; **Exhibit 5**. Unfortunately
3  for Mr. Gleich, all 1,000,000 authorized shares of NTI have already been issued to existing
4  shareholders, as a result the attempt was futile.

5       8.    Kindt is in possession of other resolutions and minutes that purport to evidence the
6  meetings and minutes relating to the authorization of new shares, and issuance of the shares,
7  related to NCI-NV. *Id*. at ¶13; **Exhibit 4**.

8       9.    As an officer, major shareholder, and director of the NTI Entities, Kindt is entitled
9  to up-to-date and accurate profit & loss statements, balance sheets, bank statements, loan
10  applications, legal actions, corporate documents and other essential business and operational
11  documents and data.

12       10.    At Gleich's direction, the NTI Entities diverted financial resources in the hundreds
13  of thousands of dollars to the Nevada operations, depriving the other operations of critical items
14  such as liability insurance, airport fees, fuel, parts, maintenance, payroll, subcontractor and driver
15  payments. By his acts and omissions Gleich has deprived Kindt of any control and/or say as to
16  where resources are directed and allocated. *Id*. at ¶14.

17       11.    Gleich secretly formed a new Nevada profit corporation called National Ground
18  Transportation Inc. on January 18, 2022. *Id.* at ¶15; **Exhibit 6**.

19       12.    In addition, Gleich secretly set up new bank accounts: one on November 24, 2021,
20  and the other for National Ground Transportation Inc. on January 25, 2022 with Lexicon Bank,
21  Las Vegas, NV, and now yet another, an account located at City National Bank. *Id*. at Exhibit
22  XX.

23       13.    In addition, Kindt recently received a bill from Assured Document Destruction,
24  Inc. on January 31, 2022 with the description shredding documents in a file cabinet at the location
25  of Defendant Gleich's office. *Id.* at ¶16.

26       14.    Gleich, Jacobi and Pantaleo have failed to account for certain loan proceeds that
27  have not been placed into Debtors' bank accounts. Since November, 2021 approximately
28  $2,500,000 of loans have been procured by or on behalf of NTI. Only $950,000 has been

4863-8051-2782, v. 1

accounted for. *Id*. at ¶17. Despite repeated requests, none of the above individuals will provide Kindt with information concerning NTI's finances. *Id*.

15. As a result of the above, on February 8, 2022, Kindt filed a Verified Complaint against Gleich, Jacobi, Pantaleo and the NTI Entities, individually and derivatively, seeking to stop defendants' unlawful acts. *See* Kindt Decl. at **Exhibit 7**. Kindt also filed for an emergency *Ex Parte* temporary restraining order ("TRO") against the above named individuals and NTI Entities.

16. On February 9, 2022, at 4:49 p.m., Judge Kishner granted Kindt's Motion for an *Ex Parte* TRO. *See* Kindt Decl. at **Exhibit 8**, TRO.

17. On February 10, 2022 at 9:06 a.m., just as the bond on the TRO was being posted at the Eighth Judicial District Court, the NTI Entities started their corporate Chapter 11 filings, removing jurisdiction from the state court to this Court. *See e.g.* [ECF No. 1].

18. On February 14, 2022 at 8:30 a.m., the state court held a continued hearing on the TRO, and extended it further as to the non-debtor defendants *only,* requiring Gleich, Jacobi and Pantaleo, including NTI-NY Inc. and National Ground Transportation (non-debtors) to comply with certain directives set forth in that TRO. To date, these individuals have refused to actively participate in the case, and failed to attend the hearings leading up to these issues.

19. For the reasons set forth herein, and as supported below, this Court should dismiss the instant Chapter 11 Case for cause, including the other NTI Entities that purported to file for Chapter 11. Alternatively, if this Court deems it proper, a Chapter 11 Trustee should be appointed to oversee the affairs of the Debtor and its subsidiaries.

**IV.    ARGUMENT**

A party cannot subject an entity to bankruptcy without authority. *Price v. Gurney*, 324 U.S. 100, 105-07, 65 S. Ct. 513, 89 L. Ed. 776 (1945). As the Supreme Court has stated, "the initiation of [bankruptcy] proceedings, like the run of corporate activities, is left to the corporation itself, *i.e.,* to those who have the power of management." *Id.* at 104; *see also Keenihan v. Heritage Press, Inc.*, 19 F.3d 1255 (8th Cir. 1994) ("In the absence of a valid petition, a bankruptcy court has no basis upon which to dispose of a corporation's assets or resolve its debt status."); *In re*

4863-8051-2782, v. 1

*Studio 2000 USA, Inc.*, No. 02-32634-TC, 2003 WL 1956241 (Bankr. N.D. Cal. Apr. 11, 2013) (court-appointed agent for corporation awarded sanctions against attorney who filed on behalf of corporation an unauthorized Chapter 11 petition, which was signed by president of corporation); *In re S & R Groundview, LLC*, No. 13-03098-8-RDD, 2013 WL 5525729, at *1 (Bankr. E.D.N.C. Oct. 4, 2013) ("A bankruptcy court cannot establish jurisdiction over a petitioning entity where the individual instituting the proceeding lacks authority under state law or the corporate governing documents.").

The law is clear that where "those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, [the court] has no alternative but to dismiss the petition." *Price*, 324 U.S. at 106 (dismissing bankruptcy petition filed by shareholders who did not have a right to file a petition on behalf of the corporation); s*ee also, Oasis at Wild Horse Ranch, LLC v. Sholes (In re Oasis at Wild Horse Ranch, LLC)*, 2011 WL 4502102 at *10, 2011 Bankr. LEXIS 4314 at *29 (9th Cir. BAP Aug. 26, 2011) ("It is generally accepted that a bankruptcy case filed on behalf of an entity by one without authority under state law to so act for that entity is improper and must be dismissed.") (internal citations and quotations omitted). Indeed, sanctions can be imposed if a party or its counsel improperly files a bankruptcy case without the appropriate corporate authority. *See In re Blue Pine Group, Inc.*, 448 B.R. 267, 270 (Bankr. D. Nev 2009).

Here there was no corporate resolution authorizing the filing of the instant Chapter 11 Case. Pursuant to the Debtor's parent company's Bylaws, "The business of the Corporation *shall* be managed by its Board of Directors, which may exercise all such powers of the Corporation and do all such lawful acts and things as are not by statute or by the Articles of Incorporation or these Bylaws directed or required to be exercised or done by the stockholders." *Id*. at Article III, § 3.1 (emphasis added). Mr. Kindt is on the board of directors of the Debtor and did not receive notice of a meeting of the board of directors pursuant to Sections 3.5, 3.6 and/or 3.7 of the Bylaws. *Id*. As a result, there could be no "quorum" or "voting" as to the filing of the instant Chapter 11, in compliance with Section 3.8 of the Bylaws ("A majority of the Directors then in office, at a meeting duly assembled, shall constitute a quorum of Board of Directors for the transaction of

business…"). *Id*. at § 3.8.  There is no corporate resolution memorializing notice, a meeting, quorum, or a vote of directors authorizing the filing of the instant Chapter 11 Case.  *See* Kindt Decl. at ¶¶ 4-5.

Mr. Kindt is also a 45% "Founding Shareholder" and officer of the Debtor's parent company. *Id*. at ¶3.  As a major shareholder (owning 450,000 shares of the total 1,000,000 shares authorized under Nevada law), Mr. Kindt never received notice of a meeting of shareholders either. *Id*. at ¶4; *see also* **Exhibit 1** at Article II (outlining the requirements for shareholder meetings, notice and voting).

Instead of obtaining proper authority from the board of directors or the shareholders, Mr. Gleich unilaterally filed the Chapter 11 in his capacity as the President and Chief Executive Officer of the Corporation. *See* Resolution at [ECF No. 3].  But the law is clear that the President does not have the authority to file this Chapter 11 Case, without specific authorization by the board of directors through powers vested in the board by the Bylaws.  *See In re Stavola/Manson Elec. Co., Inc.*, 94 B.R. 21, 24 (Bankr. D. Conn 1988).  Mr. Gleich does not have the unilateral authority to pass acts and resolutions – especially those that relate to a major decision such as bankruptcy filings for NTI and its subsidiaries.  The filing of a voluntary bankruptcy petition has been considered outside the ordinary course of business and to be an event requiring more than the discretion of a corporation president. *See In re King Brand Food Products, Inc*., 52 B.R. 109, 110 (Bankr. S.D. Fla 1985).

Because there are no "orders and resolutions of the Board of Directors" to carry into effect, and because there is no mention of a meeting of the directors, a notice of such meeting, or even a resolution that is executed by the directors for the President to carry out, this case was filed without the proper corporate authority and must be dismissed.  Debtor baldly alleges that the president of the Debtor's parent company (also a 45% shareholder and director) had the power to file the Chapter 11 Case, without first calling a meeting and obtaining the consent of the directors or shareholders, but this is patently untrue as set forth herein.

4863-8051-2782, v. 1

**V.    CONCLUSION**

As set forth above, this Chapter 11 Case should be dismissed due to a lack of authority for its initial filing. Kindt respectfully requests that this Court enter an order dismissing this Case, and for any other relief that this Court deems just and proper, including attorneys' fees and expenses for the improper filing.

Dated this 18th day of February, 2022.

McDONALD CARANO LLP

By: */s/ Ryan J. Works*
Ryan J. Works, Esq. (NSBN 9224)
Amanda M. Perach, Esq. (NSBN 12399)
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
rworks@mcdonaldcarano.com
aperach@mcdonaldcarano.com

*Attorneys for John Kindt*
